# Kennedy *v.* Way.

[MARCH 23, 1850.]

Though a party driving on a public road should lose all control of his horse, and an injury ensues in consequence, yet if the jury believe that the loss of control was the result of the defendant's prior fault, the plaintiff may recover.

Driving at the rate of fifteen miles an hour, or a mile in four minutes, on a public highway, is unlawful; and if death ensues from a collision thus produced, without fault of the injured party, the offence, it seems, would be murder in the second degree, unless accompanied with such circumstances of passion as to reduce the offence to manslaughter.

In an action of trespass against the master of a horse for a collision, it is for the latter to show that he was not in fault.

Where a collision occurs on a public road, if the jury believe the defendant was engaged at the time in a trial of speed with a third party, the jury may give exemplary damages.

Where the court charged the jury that they might give exemplary damages, which the jury declined to do, and found damages which the court thought much too small, the court, nevertheless, refused an application to grant a new trial, holding that the question of damages was one for the jury, with which the court could not meddle.

Two actions of trespass were brought, one by the plaintiff, and the other by the plaintiff's wife, for damages sustained by a collision in Broad street. The plaintiff, with his wife, were in a wagon, and were struck by the defendant's wagon, which latter, at the time, was going at the rate of a mile in four minutes. There was some evidence to show that there was at the time a trial of speed between the defendant and a third person; but this was disputed by the defendant, who maintained that his horse had run away with him, and that it was entirely out of his power to control it. The plaintiff's wagon was broken, and his wife thrown to the ground, though she sustained no material injury. It came out incidentally, that Broad street, between the Germantown Road and Green Hill, had become

[Kennedy v. Way.]

a sort of racing course for fast trotting horses, of which, it was alleged, the defendant's was one; and it appeared that in the afternoons the habit had become so settled, as to expose passengers to much danger.

ROGERS, J.—In charging the jury, said, that the case was very important to the defendant, and to the public, though the plaintiff had but little pecuniary interest in it, operated upon, as he seems to have been, by higher motives. The counsel had discharged their duty, and it now devolved upon the court and jury to do theirs. There are two actions—one for injuries to Mr. K., the other for injuries to Mrs. K., and these two were necessary, and therefore Mr. K. is not obnoxious to censure on that account. It was alleged that these injuries were produced by the illegal, careless and improper conduct of the defendant; and, after reviewing the facts, the judge continued: It is for the jury to say, how did the accident arise; was it from the improper conduct of the defendant; or was it from causes over which the defendant had no control?—and of this the burden of proof is upon the defendant, and it is for the jury to examine how far these excuses will avail him. If a horse runs away, without the fault of the driver, he is not answerable; but he must show he was not in fault. The judge here commented upon the testimony of the witness, with whom the plaintiff's counsel alleged Way was running at the time of the accident, and expressed his surprise at the neglect to call a witness who could have told all the particulars.

But, admitting that a short time before this disaster the defendant lost all command of his horse, and could not stop him, yet if that was produced by the previous fault of the defendant, he is responsible for all results directly or indirectly flowing from it. Driving at the rate of fifteen miles an hour, or a mile in four minutes, on a public highway, is dangerous, and in itself unlawful; a fast trotting

[Kennedy v. Way.]

horse is a pretty plaything, but it is expensive, and to be used in its proper place, but not for the public highway; the public are not to be endangered by lawless, dangerous and improper sports, and where loss of life is occasioned by such, the offence is homicide, manslaughter or murder of the second degree—both being the subjects of penitentiary punishment. There are two questions:—First, was the accident produced by defendant's improper conduct? On this you can have but little difficulty, I think. Second, as to the amount of damages. The plaintiff ought to have ample compensation for all injury to himself and wife, and to his property. If the defendant was engaged in a trial of speed, the jury may give exemplary damages, large and heavy; and the judge advised the jury to give such, as well to compensate the plaintiff as to punish the defendant. He has been fined $100 by Judge Parsons, and for this the jury may give credit, if they think proper. If he was trying to stop his horse at the time, the damages should be mitigated. A great deal has been said about the plaintiff's motives; they do him no manner of discredit. Those who indulge in these things should recollect that, though it may be sport to them, it may be death to others.

The jury found a verdict of $75 for the plaintiff in each case.

A motion was made by the plaintiff for a new trial, which was submitted, without argument, by *H. M. Phillips* and *W. B. Reed*, for the plaintiff, and *G. W. Barton* and *Clarkson*, for the defendant.

ROGERS, J.—Said, he did not agree with the verdict. He thought the damages ought to have been heavier, and he was surprised at the result. The question of damages, however, was one for the jury, which he would not meddle with. It might have been that the jury considered the punishment in the quarter sessions as sufficient punishment. The case ought to be a warning to all persons who make

[Kennedy *v.* Way.]

a practice of fast driving in the public streets. If death had ensued in consequence of this collision, the perpetrator would have been held guilty of murder in the second degree, unless accompanied with such circumstances of passion as to reduce the offence to manslaughter.*

---

* In the case of *The Europa*, Dr. Lushington said, that "if a steamer went from twelve to fourteen knots an hour through anchorage ground, where from two hundred to three hundred vessels were lying, and a life was lost, it would be manslaughter." 2 U. S. Law Mag. 500.